


FILED

Nov 26 2025, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Mary Kem, Kevin J. Roseberry, Rita J. Bass, and Fred E. Kem,

*Appellants-Defendants*

v.

Reggie Spencer,

*Appellee-Plaintiff*

---

November 26, 2025

Court of Appeals Case No.
24A-PL-1936

Appeal from the Grant Circuit Court

The Honorable Mark E. Spitzer, Judge

Trial Court Cause No.
27C01-2404-PL-18

---

**Opinion by Judge Pyle**
Judges Bradford and Kenworthy concur.

**Pyle, Judge.**

## Statement of the Case

In this interlocutory appeal, Mary Kem ("Mary"), Kevin Roseberry ("Kevin"), Rita J. Bass ("Rita"), and Fred E. Kem ("Fred") (collectively, "defendants") appeal the trial court's order that denied their motion to transfer venue to Jasper County. The underlying complaint, filed in Grant County by Reggie Spencer ("Reggie"), alleged a breach of fiduciary duty, fraud, and undue influence related to the changing of life insurance policy beneficiaries. Defendants argue that the trial court erred when it denied their motion to transfer venue to Jasper County. Concluding that the trial court did not err, we affirm the trial court's judgment.

We affirm.

## Issue

> Whether the trial court erred when it denied the defendants' motion to transfer venue.

## Facts

In April 2016, Evelyn Roseberry ("Evelyn"), who was a resident of Grant County, applied for and obtained a Baltimore Life Insurance Company life insurance policy ("the Baltimore Policy"), a National Western Life Insurance Company annuity ("the National Annuity"), and an Investor's Heritage life insurance policy ("the Investor's Policy") (collectively, "the Policies"). Evelyn listed a Grant County address on the Baltimore Policy and the Investor's

Policy.[1]  The Policies listed Mary, Kevin, Rita, Fred, and Reggie as beneficiaries.

[4]     In December 2018, Evelyn executed a durable power of attorney, in which Evelyn listed Kevin and Fred as her attorneys in fact.  In May 2019, Kevin, as Evelyn's power of attorney, changed the listed beneficiaries of the Policies to exclude Reggie.  In February 2023, Kevin and Fred, as Evelyn's power of attorney, changed the beneficiaries of the National Annuity once more and continued Reggie's exclusion.

[5]     In April 2023, Evelyn died as a resident of Grant County.  When Evelyn died, the Policies listed Mary, Kevin, Rita, and Fred as 25% beneficiaries.  Evelyn's death triggered the Policies, and Mary, Kevin, Rita, and Fred each received 25% of the Policies' benefits.

[6]     In April 2024, Reggie, a resident of Grant County, filed a complaint in Grant County.  Reggie's complaint alleged a breach of fiduciary duty against Kevin and Fred and fraud and undue influence against the defendants.  Reggie specifically alleged that, when the Policies were first drafted, Reggie had been listed as a 20% beneficiary along with the defendants.  Reggie's complaint alleged that, in 2019, the Policies' beneficiary designations were changed by Kevin or Fred, as power of attorney over Evelyn, to exclude Reggie as a beneficiary.  Further, in his complaint, Reggie alleged that Kevin and Fred's

---

[1] Evelyn's address was redacted from the copy of the National Annuity application included in the appendix.

changing of the Policies' beneficiaries amounted to a breach of fiduciary duty. Also, Reggie alleged in the complaint that the changes to the Policies' beneficiaries amounted to fraudulent acts. In his complaint, Reggie alleged that the defendants "exercised undue influence over [Evelyn] and prevented [Reggie] from having contact with the deceased or being physically present with the deceased." (App. Vol. 2 at 14). Reggie's complaint requested his original 20% share of the Policies as damages. At the time of the complaint, Mary and Fred were residents of Jasper County, Rita was a resident of Bartholomew County, and Kevin was a resident of Grant County.

[7]     In June 2024, the defendants filed a motion to transfer venue to Jasper County under Trial Rule 12(B)(3) and Trial Rule 75(A). In their motion, the defendants argued that because two of the four defendants resided in Jasper County, the preferred venue under Trial Rule 75(A)(1) was Jasper County.

[8]     In July 2024, the trial court held a hearing on the defendants' motion. At the hearing, the defendants made the same argument that they had asserted in their motion to transfer venue. Additionally, the defendants argued that none of the other factors under Trial Rule 75(A) applied to the case.

[9]     Reggie argued that Trial Rule 75(A)(1) and (A)(2) were the relevant subsections for the trial court's ruling on the venue motion. Reggie further argued that, under Trial Rule 75(A)(1), he did not believe that a greater percentage of the defendants resided in Jasper County because only 50% of the defendants resided in Jasper County. Reggie argued that Grant County was the preferred

venue under Trial Rule 75(A)(2) because the underlying facts of Reggie's complaint had arisen in Grant County. The defendants responded by arguing that they did not believe that the underlying complaint dealt with a harm or injury to a chattel.

[10] Later that month, the trial court issued an order denying the defendants' motion to transfer venue to Jasper County. In its order, the trial court found that Grant County was a preferred venue under Trial Rule 75(A)(2). Specifically, the trial court found that Reggie's beneficiary interest in the Policies was a chattel, that Evelyn had held the Policies in Grant County, and that Reggie's claims sufficiently related to the Policies. In doing so, the trial court stated that:

> This conclusion is consistent with our Supreme Court's assertion that the focus of Trial Rule 75(A)(2) is the location of the property or activity that gives rise to a claim. The location of the "intangible chattel" here is in Grant County by virtue of both Evelyn and Reggie's residence, and the activity giving rise to the claim (the application for the policies, the designation of beneficiaries, and the change of beneficiaries) all occurred in Grant County, Indiana.

(App. Vol. 2 at 11) (citation omitted).

[11] Defendants now appeal.

## Decision

[12] At the outset, we note that Reggie did not file an Appellees' brief. When an appellee fails to submit an appellate brief, "we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Front Row*

*Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (cleaned up). "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (cleaned up).

[13] The defendants argue that the trial court erred when it denied their motion to transfer venue to Jasper County. "We review factual findings on an appeal from a ruling on a motion for transfer of venue for clear error and review conclusions of law de novo." *Scribbles, LLC v. Wedgewood by Wedgewood*, 101 N.E.3d 844, 846 (Ind. Ct. App. 2018), *trans. denied*. "Where factual determinations are made from a paper record, however, those determinations are also reviewed de novo." *Id.*

[14] Trial Rule 75(A) provides, in relevant part, as follows:

> Venue. Any case may be venued, commenced and decided in any court in any county, except, that upon the filing of a pleading or a motion to dismiss allowed by Rule 12(B)(3), the court, from allegations of the complaint or after hearing evidence thereon or considering affidavits or documentary evidence filed with the motion or in opposition to it, shall order the case transferred to a county or court selected by the party first properly filing such motion or pleading if the court determines that the county or court where the action was filed does not meet preferred venue requirements or is not authorized to decide the case and that the court or county selected has preferred venue and is authorized to decide the case. Preferred venue lies in:
>
> > (1) the county where the greater percentage of individual defendants included in the complaint resides, or, if there is no such greater percentage, the place where any individual defendant so named resides; or

> (2) the county where the land or some part thereof is located or the chattels or some part thereof are regularly located or kept, if the complaint includes a claim for injuries thereto or relating to such land or such chattels, including without limitation claims for recovery of possession or for injuries, to establish use or control, to quiet title or determine any interest, to avoid or set aside conveyances, to foreclose liens, to partition and to assert any matters for which in rem relief is or would be proper[.]

[15] "[T]here is no priority among Rule 75(A)'s subsections." *Belcher v. Kroczek*, 13 N.E.3d 448, 451 (Ind. Ct. App. 2014). "There may be multiple preferred venues in a given case, and a motion to transfer venue cannot be granted when an action has been filed in a preferred venue." *Id.*

[16] The defendants argue that the trial court erred when it found that Grant County was a preferred venue under Trial Rule 75(A)(2). We disagree.

[17] We first address the chattel at issue in this case. The defendants disagree with the trial court's determination that Reggie's beneficiary interest in the Policies was a chattel. Specifically, they contend that Reggie could not have had a beneficiary interest at the time of the complaint because the Policies had already terminated and the proceeds had been disbursed. Alternatively, the defendants argue that the chattel in this case would be the money proceeds that were dispersed from the Policies but that Reggie failed to present any evidence that these proceeds were located or regularly kept in Grant County.

[18] We, however, determine that the chattel here is the Policies, not the money proceeds paid from the Policies or Reggie's beneficiary interest in the Policies.

A "chattel" is defined as "[m]ovable or transferable property; personal property; esp[ecially], a physical object capable of manual delivery and not the subject matter of real property." *R & D Transp., Inc. v. A.H.*, 859 N.E.2d 332, 333 n.1 (Ind. 2006) (quoting Black's Law Dictionary 251 (8th ed. 2004)). An insurance contract is considered personal property. *In re Est. of Foleno ex rel. Thomas v. Est. of Foleno*, 772 N.E.2d 490, 496 (Ind. Ct. App. 2002), *trans. denied*. Further, "[i]t is well settled in Indiana that a policy of insurance is a chose in action with which the insured can do with or dispose of, as he pleases, in the absence of prohibitory legislation or contract stipulations[,]" and "[t]he policy has all the characteristics of personal property and can be delivered and transferred as other personal property." *Id.* at 496-97 (quoting *Elliott v. Metro Life Ins. Co.*, 64 N.E.2d 911, 917 (Ind. Ct. App. 1946) (emphasis removed). Here, the Policies are personal property and can be delivered or transferred. Thus, the Policies are chattels.

[19] We next turn to whether the Policies or some part thereof are regularly located or kept in Grant County. We note that although the record does not explicitly state where the Policies were regularly located or kept, the record reveals that Evelyn, when applying for the Policies, listed her address in Grant County, owned the Policies as a resident of Grant County, and died as a resident of Grant County. However, the location of a chattel is not the only factor that can determine venue under Trial Rule 75(A)(2). On this point, we find the case *R & D* to be instructive.

In *R & D*, a driver of a tractor-trailer owned by R & D was involved in an accident with a car in which A.H. was a passenger. The accident occurred in Dearborn County, the tractor-trailer driver was a resident of Hendricks County, R & D was headquartered in Hendricks County, and A.H. was a resident of Porter County. In the complaint filed in Porter County, A.H. sued for, among other claims, the loss and destruction of her orthotic devices, clothing, and other chattels regularly kept in Porter County. R & D and the tractor-trailer driver moved for transfer of the case to either Dearborn or Hendricks County, and the trial court denied their motions. On appeal, our Court affirmed the trial court's judgment, and the Indiana Supreme Court granted transfer.

The Indiana Supreme Court noted, amongst two other reasons less relevant to our case, that "the focus of T.R. 75(A)(2) is the location of the property or *activity that gives rise to a claim*." *R & D*, 859 N.E.2d at 334 (emphasis added). Further, our supreme court explained that when Trial Rule 75(A)(2) was amended to include chattels, this "signified a broadened understanding of what kind of property might be important to determining venue, but . . . the significance of real or personal property's *location* [is] the most important factor." *Id.* at 335 (emphasis in original). Additionally, the Indiana Supreme Court noted that the location where A.H. "usually kept her orthotic devices played no role in the accident itself or in the claims of the lawsuit she filed. Rather, her claim involved a motor vehicle accident; the location that played the important role was that of the actual collision." *Id.* (internal quotation

marks removed). Ultimately, the Indiana Supreme Court held that Porter County was not the county of preferred venue. *Id.* at 337.

[22] Turning back to the case before us, our review of the record reveals that Reggie's complaint alleged a breach of fiduciary duty against Kevin and Fred and undue influence and fraud against the defendants. In his allegation of breach of fiduciary duty, Reggie alleged that Kevin and Fred had changed the Policies' beneficiaries to exclude him. In his allegations of fraud, Reggie alleged that the changing of the beneficiaries was a fraudulent act that the defendants worked in concert toward. Further, in his allegation of undue influence, Reggie specifically alleged that the defendants did not allow him to have contact with or be physically present with Evelyn, a resident of Grant County. Indeed, our review of the record reveals that Kevin, a resident of Grant County, had changed the Policies' beneficiary designations in 2019, and Kevin and Fred made an additional change in 2023. Thus, the location of the activity that gave rise to Reggie's claims were in Grant County, the county where Evely, the owner of the Policies, resided, where Kevin and Fred had allegedly changed the Policies' beneficiaries, and where Reggie had allegedly been unable to see Evelyn. The actual location of the Policies, much like the orthotics in *R & D*, played no role in Reggie's claims; instead, the important location where the activity arose leading to the claim was Grant County. *See Bagsby v. Snedeker*, 93 N.E.3d 1127, 1131-32 (Ind. Ct. App. 2018) (holding that, in a case where plaintiff and defendant lived in Warren County and defendant shot and killed plaintiff's dog in Warren County, Tippecanoe County was not a

preferred venue where the location of a deceased dog in that county "played no role in the alleged shooting or any of the claims in the lawsuit"), *trans. denied*.

[23] Finally, we examine whether Reggie's complaint includes a claim for injuries to or relating to the Policies. We conclude that it does. When determining whether a claim relates to a chattel under Trial Rule 75(A)(2), we examine whether a sufficient nexus exists between the chattel and the underlying action. *Bostic v. House of James, Inc.*, 784 N.E.2d 509, 512 (Ind. Ct. App. 2003), *trans. denied*. In doing so, our Court utilizes a "'broad interpretation'" of the "'relates to'" language. *Id.* (quoting *Diesel Const. Co., Inc. v. Cotten*, 634 N.E.2d 1351, 1354 (Ind. Ct. App. 1994)). Here, because Reggie's complaint alleges a breach of fiduciary duty and fraud when Kevin and Fred had changed the Policies' beneficiaries to exclude Reggie, we believe that a sufficient nexus exists between the Policies and Reggie's claims.[2]

[24] We hold that Grant County is a preferred venue under Trial Rule 75(A)(2).[3] Therefore, we affirm the trial court's judgment.

[25] Affirmed.

---

[2] The defendants' brief did not address whether Reggie's complaint included a claim for injuries to or relating to the Policies.

[3] Because we have determined that Grant County is a preferred venue under Trial Rule 75(A)(2), we need not address the defendants' argument that Jasper County is a preferred venue under Trial Rule 75(A)(1). *See Belcher*, 13 N.E.3d at 451 (noting that there "may be multiple preferred venues in a given case" and that "a motion to transfer venue cannot be granted when an action has been filed in a preferred venue").

Bradford, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Gregory A. Neibarger
Charles E. Oswald
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana